AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)   ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

LODGED
CLERK, U.S. DISTRICT COURT
4/4/2024
CENTRAL DISTRICT OF CALIFORNIA
BY: ___CDO___ DEPUTY

FILED
CLERK, U.S. DISTRICT COURT
April 4, 2024
CENTRAL DISTRICT OF CALIFORNIA
BY: ___IV___ DEPUTY

United States of America

v.

GRADEN CLIFTON SELLS,
    Defendant.

Case No.   2:24-mj-01973-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about March 22, 2024, in the county of Los Angeles in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2115 | Post Office Burglary |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/ Eric Martinez, USPIS Postal inspector
*Complainant's signature*

Eric Martinez, USPIS Postal inspector
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:   April 4, 2024

*Patricia Donahue*
*Judge's signature*

City and state:   Los Angeles, California

Hon. Patricia Donahue, U.S. Magistrate Judge
*Printed name and title*

AUSA: Alexandra Michael (x3756)

# I. AFFIDAVIT

I, Eric Martinez, being duly sworn, declare and state as follows:

## II. PURPOSE OF AFFIDAVIT

1. This affidavit is made in support of a criminal complaint against and arrest warrant for Graden Clifton Sells III ("SELLS") for a violation of Title 18, United States Code, Section 2115, Post Office Burglary.

2. This affidavit is also made in support of an application for a warrant to search an Apple iPhone SE, bearing serial number FFMD5KP9PLJM (the "SUBJECT DEVICE"), currently in the custody of the United States Postal Inspection Service ("USPIS") in San Bernadino, California, as described more fully in Attachment A.

3. The requested search warrant seeks authorization to seize evidence, fruits, or instrumentalities of violations of Title 18, United States Code, Sections 1708 (Mail Theft and Possession of Stolen Mail), 371 (Conspiracy), 1028 (Fraud and Related Activity in Connection with Identification Documents, Authentication Features, and Information), 1029 (Access Device Fraud), 1344 (Bank Fraud), 1028A (Aggravated Identity Theft), and 2115 (Post Office Burglary) (collectively, the "Subject Offenses"), as described more fully in Attachment B. Attachments A and B are incorporated herein by reference.

4. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and

witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested search and arrest warrants, and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### III. BACKGROUND OF POSTAL INSPECTOR ERIC MARTINEZ

5.   I am a United States Postal Inspector ("Postal Inspector") employed by the Los Angeles Division of the United States Postal Inspection Service ("USPIS") and have been so employed since July 2022.  I am currently assigned to the Pasadena Mail theft and Violent Crimes Team.  My responsibilities include the investigation of crimes against the United States Postal Service ("USPS"), crimes related to the misuse and attack of the mail system, and assaults and threats against USPS employees.  I completed a sixteen-week basic training course in Potomac, Maryland, which included training in the investigation of identity theft via the United States Mail. I have received both formal and informal training from the USPIS regarding mail theft and identity theft.

6.   Based on my training and experience, I have learned that mail thieves gain access to unlocked and locked curbside mailboxes, neighborhood distribution and collection bulk units ("NDCBU") or mail collection boxes, using various methods. These methods typically involve the use of pry tools, such as crowbars, to gain access to NDCBU's in order to steal mail from numerous mailboxes at one time.  In some cases, mail thieves

steal mail simply by opening an unlocked curbside mailbox. USPS "Arrow keys" are used by USPS mail carriers to unlock USPS "Arrow locks" in order to gain access to neighborhood distribution and collection bulk units ("NDCBU") and mail collection boxes and deliver mail to the respective mailboxes found therein.  In my training and experience, I have also learned that non-postal employees and mail thieves refer to Arrow keys as "skeleton keys" or "shaved keys."  Mail thieves typically use stolen or counterfeit arrow keys and/or pry tools, such as crow bars, to gain access to NDCBU's in order to steal mail from numerous mailboxes at one time.  In addition, I know mail thieves burglarize post offices to steal US Mail and USPS property.  As a result of stealing mail, mail thieves can gain access to items such as checks, money orders, cash, and gift cards, as well as individuals' personal information, and use such information to commit bank fraud, check fraud, and access device fraud with credit cards and debit cards.

### IV. SUMMARY OF PROBABLE CAUSE

7. On or about March 22, 2024, and continuing through March 26, 2024, SELLS and Co-Conspirator 1 burglarized two post offices located in the cities of Llano and Wrightwood, California and attempted to burglarize a third post office in Pearblossom, California.  On March 26, 2024, Co-Conspirator 2 joined SELLS and Co-Conspirator 1 during the burglary of the Wrightwood Post Office and the attempted burglary of the Pearblossom Post Office.  SELLS's vehicle, a black Mitsubishi Galant, with Arizona license plate number "BFA 2NP" ("SELLS's

Mitsubishi") was used during each of the burglaries, global positioning satellite ("GPS") monitoring for SELLS places him in the area of the post office locations at the approximate times of the burglaries.  During a post-arrest Mirandized interview, SELLS admitted his participation in the burglaries.  As discussed below, when these burglaries were committed, SELLS was on probation for Second Degree Burglary.

## V. STATEMENT OF PROBABLE CAUSE

8.   Based on my review of law enforcement reports, photos, and video evidence, and discussions with members from the San Bernadino County Probation Department ("SBCPD"), as well as my own observations and knowledge of the investigation, I am aware of the following:

### A. SELLS Convicted of Burglary and Placed on Probation

9.   Based on my review of SELLS criminal history records and speaking with SELLS's assigned probation officer, I know that on April 20, 2022, SELLS was arrested for violation of California Penal Code Section 459, Burglary Second Degree.  On August 16, 2022, SELLS pled guilty to the charge was sentenced to 236 days of state prison.  SELLS was later released from California State Prison and was placed on supervision with San Bernardino County Probation under Post Release Community Supervision terms that include the following conditions:

      a.   Violate no Law.

      b.   Submit to a search of your person, residence and/or property under your control, at anytime of the day or

night, without a search warrant by any law enforcement, and with or without cause.

10. According to SELLS's assigned probation officer, SELLS stated that he did not have a place to reside, and therefore he was placed on global positioning satellite ("GPS") monitoring.

**B.  March 22, 2024, Burglary of Llano Post Office**

11. On March 22, 2024, at 6:40 AM, USPIS was notified of an alarm activation at the Llano Post Office located at 17234 Pearblossom Highway, Llano, CA 93544. Deputies with LACSO Palmdale Station and USPIS responded to the post office and reviewed the facility's surveillance video. The surveillance footage showed the following:

    a. On March 22, 2024, at approximately 6:35 AM, a black sedan vehicle pulled into a dirt road located to the east of the Llano Post Office parked near the rear parking lot. At approximately 6:44 AM, a male wearing a black hooded sweatshirt, dark blue pants, black ski mask, and black and white Nike shoes walked from the back parking area to the post office front door. The man was later identified as SELLS as discussed in more detail below. SELLS entered an unlocked portion of the post office[1] and looked around. He removed a hammer from underneath his clothing and broke the glass panel on the door leading to the retail lobby. SELLS went through the damaged door and jumped over the retail counter.

---

[1] The Llano Post Office has an unlocked lobby that allows customer to access Post Office Boxes outside of USPS business hours. A glass door separates the retail section of the business from the Post Office Box lobby.

5

   b. Meanwhile a second person, later identified as Co-Conspirator 1, drove the black sedan into the rear parking lot and around to the parking lot on the west side of the post office. The surveillance video captured the vehicle as an older model black Mitsubishi Galant without a front license plate. The rear license plate was covered with plastic and the access door to the fuel tank was missing. The paint on the roof of the sedan was discolored. The vehicle also had a sunroof.

   c. At approximately 6:49 AM, SELLS walked through the workroom floor towards the back door of the facility holding the hammer and a clear trash bag full of mail. As SELLS exited the facility, he dropped the hammer on the floor. SELLS placed the bag full of mail into the rear passenger seat of the black Mitsubishi before he entered the front passenger seat. At 6:50 AM the suspects fled the parking lot driving eastbound on Pearblossom.

**C.** **SELLS's Mitsubishi Identified**

 12. Postal Inspectors searched a law enforcement database containing license plate images captured on various automated license plate reader ("ALPR") cameras throughout southern California. Inspectors located multiple images of a black Mitsubishi Galant bearing Arizona license plate "BFR 2NP" captured on multiple ALPR cameras located throughout San Bernardino County ("SELLS's Mitsubishi"). SELLS's Mitsubishi had a sunroof, discolored paint on the roof, and a missing gas tank access cover. The wheels were also the same wheels captured by the Llano Post Office surveillance video. The

6

registered owner of SELLS's Mitsubishi was identified as L.F. Sells, at 11422 Cambridge Court in Adelanto, CA.

13. Postal Inspectors used law enforcement databases to identify other individuals associate to 11422 Cambridge Court and identified Graden Clifton SELLS III. A search of California's Department of Motor Vehicle ("DMV") records identified SELLS to be associated with the 11422 Cambridge Ct address.

14. Inspectors discovered that SELLS had a lengthy criminal history and was on active probation supervision with SBCP. Inspectors spoke with SBCP Officer Raul Gonzalez, who informed USPIS that SELLS was on probation supervision. As part of the terms of his PCRS, SELLS was being monitored using a GPS tracking device.

D. **March 26, 2024, Burglary of Wrightwood Post Office**

15. On March 26, 2024, Inspectors were notified that the Wrightwood Post Office located at 1440 State Highway 2, Wrightwood, CA 92397 was burglarized during the early hours of March 26, 2024.

16. Inspectors responded to the Wrightwood Post Office and reviewed the facilities surveillance video. The surveillance video displayed a time of eight hours and seventeen minutes show and captured the following:

   a. At approximately 4:15 AM, two adult males entered the unlocked post office box area of the post office. One male, later identified as SELLS, wore a grey sweatshirt, black pants, grey, black, and white Jordan shoes, a black ski mask, and a

7

black hat.  The hat displayed "Raiders" with the Las Vegas Raiders emblem across the front.  The second male, later identified as Co-Conspirator 2, wore a red Adidas hooded sweatshirt, black pants, red shoes, and a grey ski mask.

        b.    SELLS and Co-Conspirator 2 approached the locked glass door that leads to the retail section of the post office.  SELLS removes a crowbar from his clothes and breaks the glass door.  SELLS and Co-Conspirator 2enter the retail area of the post office, jump the retail counter, and enter the workroom floor.  Within a few minutes, SELLS and Co-Conspirator 2 exit the back door of the post office.  SELLS had a trash can full of parcels/mail.  Co-Conspirator 2 had additional parcels/mail in his hands.

        c.    An additional camera angle outside the front of the post office captured a black sedan with rims matching SELLS's Mitsubishi in the parking lot area of the post office at the time of the burglary.

**E.**    **March 26, 2024, Burglary of Pearblossom Post Office**

    17.  On March 26, 2024, USPIS was also notified that the Pearblossom Post Office, located at 12302 Pearblossom Highway, Pearblossom, CA 93553, was burglarized during the early morning hours of March 26, 2024.  Inspectors responded to the post office and reviewed the surveillance footage and observed the following:

    18.  At approximately 5:46 AM, the facilities surveillance camera captured SELLS's Mitsubishi license plate number "BFA 2NP" on a black Mitsubishi at the stop sign located on 123rd

Street East and Pearblossom Highway, adjacent to the west side of the Pearblossom Post Office.  The vehicle turned eastbound onto Pearblossom Highway.

19.  On March 26, 2024, Inspectors obtained video from a Dollar General Store located within 30 yards east of the Pearblossom Post Office located at 12340 Pearblossom Highway Pearblossom, CA 93553.  Dollar General Store associate E.D. provided surveillance video of the parking lot of the Dollar General Store.  The surveillance video showed the following:

   a.  At approximately 5:47 AM, SELLS's Mitsubishi drives into the Dollar General parking lot.  SELLS, dressed in a grey sweatshirt, dark pants and light-colored shoes, exited the driver side rear door.  SELLS walked behind the black Mitsubishi and covered the license plate.  At approximately 5:48 AM, Co-Conspirator 2, wearing a red hooded sweatshirt and dark pants exited the vehicle from the rear passenger side door.  SELLS and Co-Conspirator 2 walked west towards the post office.

20.  Inspectors reviewed additional surveillance video from the Pearblossom Post Office and observed the following:

   b.  At approximately 5:49 AM, SELLS and Co-Conspirator 2 approached the rear security door of the post office located on the east side of the building.  SELLS and Co-Conspirator 2 both attempted to pry open a security door[2].  After breaking the security door, they attempted to break into a second door that leads into the post office.  SELLS and Co-

---

[2] The security door leads to an outdoor landing of the facility.  Inside the landing area is a second door that provides access to the post office.

Conspirator 2 tried to pry the door open and kicked it repeatedly. They were unsuccessful. At approximately 5:54 AM, SELLS used a pry tool/crowbar to break the surveillance camera above the door. At approximately 5:55 AM, SELLS's Mitsubishi was captured on 123rd Street East towards Pearblossom Highway with the license plate covered.

**F.   March 27, 2024, Probation Search of SELLS Vehicle and Person**

21.   On March 27, 2024, Inspectors met with SBCP Officer Raul Gonzalez. Officer Gonzalez provided Inspectors with SELLS's GPS tracking information dating back to March 22, 2024. Inspectors reviewed the GPS tracking information and discovered that SELLS was present at each burglary location during the time the burglaries took place. SBCP Officers and Inspectors located SELLS using the GPS data.

22.   On March 27, 2024, at approximately 1:06 PM, SBCP Officers and Inspectors arrived at the Economy Inn located at 15822 Mojave Drive, Victorville, CA 92394 and located SELLS and SELLS's Mitsubishi. SBCP Officers and Inspectors searched SELLS, SELLS's Mitsubishi, and the Motel room.

23.   During the search of SELLS, Officer Gonzalez located an Apple iPhone SE, bearing serial number FFMD5KP9PLJM (the "SUBJECT DEVICE")

24.   The following items were found in the vehicle:

a.   crowbar/pry tool, matching the description of the tool used during the Wrightwood and Pearblossom burglaries;

10

  b. a parcel bearing tracking number ending 60194 addressed to PO Box 2921, Wrightwood, CA;

  c. a black ski mask;

  d. a grey ski mask;

  e. a grey sweater matching the sweater used by SELLS on March 26, 2024;

  f. a receipt dated March 24, 2024 from Co-Conspirator 1 for a downpayment of a 16 Hyundai; and,

  g. SELLS's wallet.

25. Located in SELLS's wallet was the following:

  a. Convenience check number 1014 from A.S.'s Bank of America account made payable to "Graden Sells" for $3,500.00 and dated March 21, 2024. The address for A.S. is listed as Post Office Box 5, in Llano, CA. The back of the check was signed "For Mobile Deposit only at NFCU";

  b. SELLS's California Identification Card ("ID"),

  c. A Navy Federal Credit Union Debit card in SELLS's name;

  d. A California ID belonging to J.L.; and,

  e. Convenience check number 1004 from R.M.'s Bank of America Account made payable to "Graden Sells" for $2,500.00 and dated March 15, 2024. The back of the check was signed "For Mobile Deposit only at NFCU.

### G. March 27, 2024, Interview of SELLS

26. On March 27, 2024, Inspectors interviewed SELLS at the SBCP office in Victorville, CA. Inspectors advised SELLS of his

Miranda Rights and SELLS agreed to speak with the officers. SELLS provided the following:

    a. SELLS was first asked by his friends to get involved with stealing mail about two weeks prior to March 27, 2024. SELLS and CO-CONSPIRATOR 1 went to Fontana and Rancho Cucamonga to steal mail from individual mailboxes.

    b. SELLS met with CO-CONSPIRATOR 1 prior to the Llano Post Office burglary on March 22, 2024. CO-CONSPIRATOR 1 drove SELLS to the post office. After SELLS broke into the post office and took mail, CO-CONSPIRATOR 1 drove SELLS and the stolen mail in SELLS's Mitsubishi to another location.

    c. SELLS, CO-CONSPIRATOR 2, CO-CONSPIRATOR 1, and another female, M.V., drove to the Wrightwood Post Office on March 26, 2024, in SELLS's Mitsubishi. SELLS and CO-CONSPIRATOR 2 broke into the post office and stole mail. CO-CONSPIRATOR 1 drove SELLS, CO-CONSPIRATOR 2, and M.V. to the Pearblossom Post Office and parked near the post office.

    d. SELLS exited the vehicle and covered the plate. SELLS and CO-CONSPIRATOR 2 walked to the post office and attempted to break into the building. They were unsuccessful.

    e. SELLS admitted to using the SUBJECT DEVICE to deposit a check stolen from the Llano Post Office into his Navy Federal Credit Union Account.

27. SELLS provided verbal consent to search the SUBJECT DEVICE and provided the passcode to the SUBJECT DEVICE. Inspector Barnes quickly reviewed the device and observed a Navy Federal Credit Union application on the device. Inspector

Barnes was able to located four mobile check deposits including the two checks located in SELLS's Mitsubishi.

## VI. TRAINING AND EXPERIENCE REGARDING MAIL AND IDENTITY THEFT

28. Based on my training and experience and information obtained from other law enforcement officers who investigate mail and identity theft, I know the following:

   a.   People who steal mail are often involved in fraud and identity theft crimes.  These individuals usually steal mail looking for checks, access devices, other personal identifying information (such as names, Social Security numbers, and dates of birth), and identification documents that they can use to fraudulently obtain money and items of value.  Mail thieves often retain these items of value from stolen mail in order to make fraudulent purchases or sell the items to others in exchange for cash or drugs.

   b.   It is common practice for individuals involved in mail theft, identity theft, bank fraud, and access device fraud crimes to possess and use multiple digital devices at once. Such digital devices are often used to facilitate, conduct, and track fraudulent transactions and identity theft.  Suspects often use digital devices to perpetrate their crimes due to the relative anonymity gained by conducting financial transactions electronically or over the internet.  They often employ digital devices for the purposes, among others, of: (1) applying online for fraudulent credit cards; (2) obtaining or storing personal identification information for the purpose of establishing or modifying fraudulent bank accounts and/or credit card accounts;

13

(3) using fraudulently obtained bank accounts and/or credit card accounts to make purchases, sometimes of further personal information; (4) keeping records of their crimes; (5) researching personal information, such as social security numbers and dates of birth, for potential identity theft victims; and (6) verifying the status of stolen access devices.

       c.    Often times mail and identity thieves take pictures of items retrieved from stolen mail or mail matter with their cellphones.

       d.    It is also common for mail and identity thieves to keep "profiles" of victims on digital devices.  Such "profiles" contain the personal identifying information of victims, such as names, Social Security numbers, dates of birth, driver's license or state identification numbers, alien registration numbers, passport numbers, and employer or taxpayer identification numbers.

       e.    It is common for mail thieves, identity thieves, and individuals engaged in bank fraud, access device fraud, and identification document fraud to use equipment and software to print credit and identification cards, to create magnetic strips for credit cards, to use embossing machines to create credit cards, to use laser printers to create checks, and to use magnetic card readers to read and re-encode credit cards.  Software relevant to such schemes can often be found on digital devices, such as computers.

       f.    Based on my training and experience, I know that individuals who participate in mail theft, identity theft, bank

14

fraud, and access device fraud schemes often have co-conspirators, and often maintain telephone numbers, email addresses, and other contact information and communications involving their co-conspirators in order to conduct their business. Oftentimes, they do so on their digital devices. Suspects often use their digital devices to communicate with co-conspirators by phone, text, email, and social media, including sending photos.

## V.  TRAINING AND EXPERIENCE ON DIGITAL DEVICES

29. As used herein, the term "digital device" includes the SUBJECT DEVICE.

30. Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that the following electronic evidence, inter alia, is often retrievable from digital devices:

    a.  Forensic methods may uncover electronic files or remnants of such files months or even years after the files have been downloaded, deleted, or viewed via the Internet. Normally, when a person deletes a file on a computer, the data contained in the file does not disappear; rather, the data remain on the hard drive until overwritten by new data, which may only occur after a long period of time. Similarly, files viewed on the Internet are often automatically downloaded into a temporary directory or cache that are only overwritten as they are replaced with more recently downloaded or viewed content and may also be recoverable months or years later.

15

b.      Digital devices often contain electronic evidence related to a crime, the device's user, or the existence of evidence in other locations, such as, how the device has been used, what it has been used for, who has used it, and who has been responsible for creating or maintaining records, documents, programs, applications, and materials on the device.  That evidence is often stored in logs and other artifacts that are not kept in places where the user stores files, and in places where the user may be unaware of them.  For example, recoverable data can include evidence of deleted or edited files; recently used tasks and processes; online nicknames and passwords in the form of configuration data stored by browser, e-mail, and chat programs; attachment of other devices; times the device was in use; and file creation dates and sequence.

c.      The absence of data on a digital device may be evidence of how the device was used, what it was used for, and who used it.  For example, showing the absence of certain software on a device may be necessary to rebut a claim that the device was being controlled remotely by such software.

d.      Digital device users can also attempt to conceal data by using encryption, steganography, or by using misleading filenames and extensions.  Digital devices may also contain "booby traps" that destroy or alter data if certain procedures are not scrupulously followed.  Law enforcement continuously develops and acquires new methods of decryption, even for devices or data that cannot currently be decrypted.

31. Based on my training, experience, and information from those involved in the forensic examination of digital devices, I know that it is not always possible to search devices for data during a search of the premises for a number of reasons, including the following:

    a. Digital data are particularly vulnerable to inadvertent or intentional modification or destruction. Thus, often a controlled environment with specially trained personnel may be necessary to maintain the integrity of and to conduct a complete and accurate analysis of data on digital devices, which may take substantial time, particularly as to the categories of electronic evidence referenced above.

    b. Digital devices capable of storing multiple gigabytes are now commonplace. As an example of the amount of data this equates to, one gigabyte can store close to 19,000 average file size (300kb) Word documents, or 614 photos with an average size of 1.5MB.

32. In addition to what has been described herein, the United States has attempted to obtain this data after verbal consent was given to USPIS by SELLS and pursuant to the conditions of SELLS's probation terms that include the search of his property.

## VI. CONCLUSION

33. For all of the reasons described above, there is probable cause that the items to be seized described in Attachment B will be found in a search of the SUBJECT DEVICE described in Attachment A.

34. There is also probable cause to believe that SELLS has committed violates of Title 18, United States Code, Section 2115, Post Office Burglary and Title 18, United States Code, Section 1708, Possession of Stolen Mail.

Attested to by the applicant
in accordance with the
requirements of Fed. R. Crim.
P. 4.1 by telephone on this
4th day of April, 2024.

*Patricia Donahue*
_____
THE HONORABLE PATRICIA DONAHUE
UNITED STATES MAGISTRATE JUDGE